THOMAS F. SACCHETTA, ESQUIRE
Attorney I.D. No. 46834
SACCHETTA & BALDINO
308 East Second Street
Media, PA 19063
(610) 891-9212                                   Attorney for plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| LISA HOGAN ADELSBERGER | : | MDL No. 2873 |
| 213 Maple Avenue #G103 | : | C/A No.: 2:23-cv-01188-RMG |
| Horsham, PA 19044 | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| THE 3M COMPANY f/k/a MINNESOTA | : | |
| MINING AND MANUFACTURING | : | |
| 3M Center | : | |
| St. Paul, MN 55133 | : | |
| and | : | |
| ANGUS | : | |
| 141 Junny Road | : | |
| Angier, NC 27501 | : | |
| and | : | |
| BUCKEYE FIRE PROTECTION | : | |
| COMPANY | : | |
| 110 Kings Road | : | |
| Kings Mountain, NC 28086 | : | |
| and | : | |
| CHEMGUARD | : | |
| 1 Stanton Street | : | |
| Marinette, WI 54142 | : | |
| and | : | |
| NATIONAL FOAM, INC. | : | |
| 350 East Union Street | : | |
| West Chester, PA 19382 | : | |
| and | : | |
| TYCO FIRE PRODUCTS, LP, Successor- | : | |
| in-Interest to The Ansul Company | : | |
| 1 Stanton Street | : | |
| Marinette, WI 54142 | : | |
| Defendants | : | |

1

## CIVIL ACTION COMPLAINT

Plaintiff, Lisa Hogan Adelsberger, by and through her attorneys, as and for her complaint against Defendants, The 3M Company f/k/a Minnesota Mining and Manufacturing, Tyco Fire Products, LP, successor-in-interest to The Ansul Company, Angus, Buckeye Fire Protection Company, Chemguard and National Foam, Inc. (hereinafter collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1.      Plaintiff, Lisa Hogan Adelsberger, brings this action for personal injuries as a result of drinking water that was contaminated by chemicals Defendants manufactured.

2.      Defendants manufactured a product that contained toxic chemicals that contaminate the environment, yet no Defendant included user warnings to protect the environment or innocent bystanders.

3.      For decades, the Defendants manufactured and sold Aqueous Film Forming Foam (herein referred to as "AFFF"), a firefighting suppressant agent, to the U.S. Navy and the Pennsylvania Air National Guard for use on ships and at military bases, including the former Willow Grove Naval Air Station Joint Reserve Base in Horsham Township, Pennsylvania (hereinafter called the "Willow Grove Base"), and the former Naval Air Warfare Center in Warminster Township, Pennsylvania (hereinafter called the "Warminster Base").  (The Willow Grove Base and the Warminster Base are collectively referred to as the "Bases.")

4.      The Defendants manufactured AFFF that contained "flurocarbon surfactants," believed to include PFOS, PFOA, and/or certain other perfluorinated compounds (hereinafter referred to as "PFCs") that degrade into PFOS or PFOA.  (PFOS, PFOA and the PFCs that degrade into PFOS or PFOA are hereinafter referred to as "Toxic Surfactants.") The Defendants'

precise compositions and formulas for their AFFF during the relevant period have not been made public.

5.      When consumed, PFOS and PFOA have been linked to numerous and serious health issues.

6.      Residents in the area near the Bases, including Plaintiff, obtained their drinking water perdominantly from groundwater pumped from either municipal or private wells.

7.      For decades, residents near the Bases and their children have been drinking, band eating food prepared with, water laced with dangerous chemicals, namely, perfluorooctane sulfonate (hereinafter referred to as "PFOS") and perfluorooctanoic acid (hereinafter referred to as "PFOA").

8.      Additionally, the existence of a contaminated drinking water supply makes a property less attractive to buyers and results in a devaluation of property.

9.      As the manufacturers of AFFF, the Defendants knew or should have known that the inclusion of Toxic Surfactants in AFFF presented an unreasonable risk to human health and the environment.

10.      Nonetheless, Defendants marked and sold their products with the full knowledge that large quantities of Toxic Surfactant-laden AFFF would be used in training exercises and in emergency situations in such a manner that the dangerous chemicals would be introduced, in large quantities, into the environment.

11.      For years, Plaintiff was exposed to and ingested PFOS and PFOA at extremely high and dangerous levels.

12.      Plaintiff had no way to know that she was consuming water and food contaminated with PFOS and PFOA until the contamination was disclosed to her by state and

federal officials.

## PARTIES

**Plaintiff**

13.    Plaintiff Lisa Hogan Adelsberger (hereinafter referred to as the "Plaintiff"), is an adult and citizen of the Commonwealth of Pennsylvania and currently resides at 213 Maple Avenue #G103, Horsham, PA.

14.    Plaintiff's water supply was contaminated with PFOS and PFOA.

15.    As a result of her exposure to drinking water contaminated with PFOS and PFOA, she developed and was diagnosed with breast cancer, MS and other health conditions.

16.    As a direct and proximate result of her exposure to drinking water contaminated with PFOS and PFOA, Plaintiff was forced to undergo extensive treatment and procedures, and as a further result of her exposure to contaminated drinking water, Plaintiff suffered from severe pain and discomfort, emotional distress, the loss of daily functions, and economic loss, including, but not limited to, present and future medical expenses, lost earnings and future lost earning capacity, all of which are a direct result of Defendants' liability producing conduct.

**Defendants**

17.    Defendant The 3M Company (f/k/a Minnesota Mining and Manufacturing Company) (hereinafter referred to as "3M") is a corporation organized and existing under the laws of the state of Delaware, having its principal place of business at 3M Center, St. Paul, Minnesota 55133.

18.    According to 3M, 3M was the only known manufacturer of PFOS and PFOS precursors in the United States.

19.     3M also manufactured PFOA.

20.     Through at least 2002, 3M commercially manufactured PFOS for AFFF and it manufactured AFFF that contained fluorocarbon surfactants according to its own formula.

21.     Defendant Tyco Fire Products, LP, Successor -in-Interest to The Ansul Company, (hereinafter referred to as "Tyco") is a Delaware corporation having a principal place of business at One Stanton Street, Marinette, WI 54143.

22.     Tyco manufactures the Ansul brand of products and AFFF.

23.     At all times relevant, Tyco and/or Ansul commercially manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants.

24.     Defendant Angus has corporate headquarters in Bentham, United Kingdom. Angus maintains a place of business in the United States at 141 Junny Road, Angier, NC 27501.

25.     At all times relevant hereto, Angus manufactured fire suppression products including AFFF that contained PFOS and PFOA.

26.     Defendant Buckeye Fire Equipment Company (hereinafter referred to as "Buckeye") is an Ohio corporation, with its principal place of business at 110 Kings Road, Kings Mountain, NC 28086.

27.     At all times relevant hereto, Buckeye commercially manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants.

28.     Defendant Chemguard is a Texas corporation, having a principal place of business at One Stanton Street, Marinette, WI 54143.

29.     At all times relevant, Chemguard commercially manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants.

30.     Defendant National Foam, Inc. (hereinafter referred to as "National Foam") is a

Delaware corporation, having a principal place of business at 141 Junny Road, Angier, NC 27501 and also having a place of business at 350 East Union Street, West Chester, PA 19382.

31.    At all times relevant, National Foam commercially manufactured fire suppression products, including AFFF that contained fluorocarbon surfactants.

32.    National Foam and its predecessors have also used the Angus and "Angus Fire" trade name and brand name for sales of AFFF in the United States for a number of decades. References to "National Foam" herein shall also refer to AFFF commercially manufactured, marketed and sold under the Angus and "Angus Fire" brand.

**Venue**

33.    The proper home venue where this matter could have otherwise been brought is \the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b).

34.    This District Court has jurisdiction over and is the proper venue for Claims for Relief One through Four pursuant to the MDL Orders in the In Re: Aqueous Film-Forming Foams Products Liability Litigation pending in the District of South Carolina Charleston Division MDL No. 2:18-MM-2973-RMG.

**GENERAL FACTUAL ALLEGATIONS**

**Background Regarding PFOS and PFOA**

35.    PFCs are manmade chemicals that do not exist in nature.

36.    There are numerous chemicals in the PFC family, two of which are PFOS and PFOA.

37.    PFOS and PFOA have been widely used in industry and in commercial products due to their quality to repel water, dirt, oil and grease.

38.     Companies also used PFOS, PFOA and other Toxic Surfactants specifically to commercially make AFFF.

39.     PFOS and PFOA have unique properties that make them persistent, bioaccumulative and toxic.

40.     First, PFOS and PFOA can persist in the environment.

41.     Due to the strength of multiple carbon-fluorine bonds, PFOS and PFOA break down very slowly in the environment, if at all.

42.     PFOS and PFOA are thermally, chemically, and biologically stable and resistant to biodegradation, atmospheric photooxidation, direct photolysis and hydrolysis.

43.     PFOS and PFOA are also water soluble, making them mobile in groundwater and the environment, and because they repel organic materials, they readily leach through the soil impacting groundwater.

44.     Typical municipal water treatment plants did not and do not filter PFOS and PFOA from contaminated water due to the chemicals' physical and chemical properties.

45.     Similarly, chlorine and other disinfectants that are typically added to municipal drinking water systems did not and do not remove PFOS and PFOA from contaminated water.

46.     Second, PFOS and PFOA are bioaccumulative.

47.     Toxicology studies show that PFOS and PFOA are readily absorbed after oral exposure and accumlate primarily in the serum, kidney and liver.

48.     PFOS and PFOA have a half-life within the human body of 2 to 9 years.

49.     PFOS and PFOA can bioaccumulate up the food chain; can cross the placenta from mother to fetus; and can be passed to infants through breast milk.

50.     Third, PFOS and PFOA are toxic.

51.    There are a number of health risks associated with exposure to PFOS and PFOA, and these risks are present even when PFOS and PFOA are ingested at seemingly low levels.

52.    PFOS and PFOA exposure is associated with, among other injuries, increased risk in humans of various types of cancer, multiple sclerosis, disorders such as thyroid disease, high cholesterol, ulcerative colitis and pregnancy-induced hypertension, as well as other conditions.

53.    Injuries occur months or years after exposure to PFOS and/or PFOA.

**PFCs in AFFF**

54.    AFFF containing PFCs was commercially developed in the 1960s as an alternative to existing firefighting foams.

55.    In 1969, the Department of the Navy issued Military Specification MIL-F-24385 ' for AFFF.

56.    A Military Specification is a document that describes the physical and /or operational characteristics that a product must meet before purchase by the United States military.

57.    That is, in order for an AFFF manufacturer to sell it's AFFF to the Navy, it was required to meet Military Specification MIL-F-24385.

58.    MIL-F-24385 covered "the requirements for aqueous film-forming foam (AFFF) liquid concentrate fire extinguishing agents consisting of fluorocarbon surfacants and other compounds" as required to meet certain performance standards that were also set forth in MIL-F-24385.

59.    If a manufacturer demonstrated that its product satisfied MIL-F-24385 performance expectations, then the product was placed on the Department of Defense Qualified Product Listing.

60.     3M, Tyco, Angus, Buckeye, Chemguard and National Foam each manufactured AFFF that was included on the Department of Defense Qualified Product Listing for MIL-F-24385.

61.     In fact, upon information and belief, 3M, Tyco, and National Foam, individually or through predecessor or affiliate companies, were the only companies whose products were included on the Department of Defense Qualified Product Listing for MIL-F-24385-compliant AFFF from the inception of AFFF through the closure of the Warminster Base in 1996.

62.     Further, upon information and belief,3M, Tyco, and National Foam, together with Buckeye and Chemguard, individually or through predecessor or affiliate companies, were the only companies whose products were included on the Department of Defense Qualified Product Listing for MIL-F-24385-compliant AFFF from the inception of AFFF through the closure of the Willow Grove Base in 2011.

63.     Upon information and belief, each of the Defendants sold AFFF to the Military for use at the Bases.

64.     MIL-F-24385 provided, among other things, that:

> The concentrate shall consist of fluorocarbon surfactants plus other compounds as required to conform to the requirements specified hereinafter. **The material shall have no adverse effect on the health of personnel when used for its intended purpose.**

65.     Although MIL-F-24385 required the use of a "fluorocarbon surfactant," it did not specify a particular chemical, such as PFOS, PFOA or another Toxic Surfactant.

66.     The Defendants had the choice to manufacture MIL-F-24385-compliant AFFF with a formula that did not include PFOS, PFOA or another Toxic Surfactant.

67.     For example, upon information and belief, each of the Defendants, except for 3M, which no longer manufactures AFFF, manufacture AFFF today with PFOS, PFOA or another

Toxic Surfactant.

68.    Upon information and belief, Defendants had the ability during all relevant times to commercially manufacture AFFF without PFOS, PFOA or another Toxic Surfactant.

69.    Nonetheless, despite their options and their knowledge of the dangers that PFOS and PFOA posed to human health and the environment, upon information and belief, Defendants commercially manufactured AFFF that contained PFOS, PFOA or another Toxic Surfactant.

70.    By including PFOS, PFOA or another Toxic Surfactant, the AFFF manufactured by Defendants did not meet MIL-F-24385.

71.    Defendants knew or should have known that the products sold to the military were harmful to human health and the environment and did not meet the requirements of MIL-F-24385.

72.    The Defendants did not timely inform the military that their products did not meet the requirements of MIL-F-24385.

**AFFF Use at the Willow Grove and Warminster Bases**

73.    At any given time during their operation, the Bases housed and used thousands of gallons of AFFF concentrate manufactured by Defendants, stored in buckets, drums, tanks, tankers, crash trucks and sprinkler systems.

74.    U.S. Navy, Air National Guard, Marines and Air Force (collectively referred hereafter to as "Military") personnel, as well as civilian firefighters, conducted training exercises at the Willow Grove and Warminster Bases.

75.    In part, the Military and civilian firefighters engaged in firefighting, explosion training, and sprinkler system testing that required the use of AFFF.

76.    For decades, firefighting training activities took place at the two military bases.

77. Each site also possessed and maintained aircraft hangars protected by ceiling units holding hundreds of gallons of AFFF.

78. The use of AFFF for training purposes included suppressing fires and explosions on the ground, clearing hoses, as well as coating runways in anticipation of difficult landings, all of which has resulted in acres of foam-covered soil and blanketed wreckages.

79. Instructions and warning labels affixed to AFFF by the Defendants did not adequately describe the scope of danger associated with storage, use, clean up and disposal of AFFF, or the procedures necessary for the safe storage, use, clean up and disposal of AFFF.

80. Defendants were aware of the health risks associates with use, disposal and bioaccumulation of AFFF components, but, upon information and belief, did not warn the users of the AFFF.

81. Defendatns were aware of the health risks of introducing AFFF into the environment, but, upon information and belief, did not warn the users of the AFFF.

82. Upon information and belief, at no time during the relevant period did the Defendants warn users of the AFFF that ingredients in the AFFF were persistent, bioaccumulative and toxic, or that, once introduced in to the environment, its chemical components would readily mix with ground and surface water and migrate off the Bases, contaminating the drinking water of the surrounding communities, and exposing tens of thousands of innocent people, including Plaintiff, to water contamination by their products.

83. In 2002, 3M ceased production of AFFF manufactured with PFOS due to health and environmental concerns.

84. 3M and the other defendants had known of these dangers for years.

85. Even though 3M ceased production of PFOS-based AFFF in 2002, neither 3M nor

any other Defendant that used, manufactured, sold, distributed and/or redistributed a Toxic

Surfactant-based AFFF recalled its dangerous products.

**Plaintiff's Discovery of Toxic Chemicals in Their Drinking Water**

86.    Prior to 2012, municipal water providers were not required to test their drinking '

water for the presents of PFOS of PFOA, and tests for PFOS and PFOA were rare.

87.    In 2012, the EPA included PFOS and PFOA in its Third Unregulated

Contaminant Monitoring Rule ("UCMR3"), which thereby required certain water providers

across the country, including the towns surrounding the Bases, to test their water for the presence

of PFOS and PFOA.

88.    In or about 2022, Plaintiff learned that her drinking water had been contaminated

with dangerous levels of PFOS and/or PFOA.

89.    Plaintiff has since learned that the source of the contamination is the use of AFFF

at the Bases; that the Defendants were the only manufacturers of AFFF approved to sell AFFF to

the Military during the relevant period; and that exposure to Defendants' chemicals caused

Decedent's injuries.

90.    As set forth herein, Defendants knowingly manufactured, sold and distributed a '

dangerous and defective product, failed to provide proper warnings to protect bystanders, such as

the Plaintiff, and failed to recall their products when they took them off the market.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

#### Defective Product - Failure to Warn

91.    Plaintiff hereby incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint as if they were set forth at length herein.

92.    At all times relevant, Defendants were in the business of, among other things, manufacturing, selling, or otherwise distributing AFFF.

93.    As manufacturers, sellers, or distributors of a commercial product, the Defendants had a duty to warn of the risks associated with the reasonably foreseeable uses of their products.

94.    As manufacturers, sellers, or distributors of a commercial product, the Defendants had a duty to provide reasonable instructions on the proper and safe use, storage and disposal of their AFFF.

95.    Defendants, as manufacturers, sellers and distributors of AFFF placed into the stream of commerce, are guarantors of their AFFF.

96.    Defendants knew or should have known that the Toxic Surfactants contained in their AFFF were toxic and carcinogenic and could lead those exposed to these toxic chemicals and/or their breakdown products to develop serious medical conditions.

97.    Defendants knew or should have known that the foreseeable storage, use and disposal of the AFFF that they manufactured, sold and distributed had the capacity to enter the water supply, to persist there fore decades, and to cause harm to human health and the environment.

98.    Defendants' AFFF was unreasonably dangerous because it was far more dangerous than an ordinary consumer would expect when used, as designed, inits intended or reasonably foreseeable manner.

99.    These risks were not obvious to users of the AFFF, nor were they obvious to residents in the vicinity of the AFFF use, including Plaintiff, who was unwittingly exposed to Defendants' toxic and carcinogenic chemicals in his drinking water.

100.    Plaintiff could not have reasonably discovered the defects and risks associated

with AFFF use.

101.    Plaintiff could not protect h34self from exposure to the Defendants' AFFF that contains toxic and and carcinogenic chemicals.

102.    The Defendants failed to provide warnings to the users that use of Defendants' AFFF could result in the contamination of groundwater and, ultimately, drinking water supplies.

103.    The Defendants failed to provide warnings to the users of the dangers to human health and the environment if their AFFF was permitted to contaminate the groundwater or drinking water supply.

104.    Defendants knew or should have known that the minimal warnings disseminated with their AFFF were inadequate.

105.    At all times relevant to this litigation, Defendants' AFFF reached its intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled and marketed by Defendants.

106.    Adequate instructions and warnings would have reduced or avoided the foreseeable risks of harm posed by the AFFF.

107.    Had Defendants provided adequate instructions and warnings, the combination of the groundwater, surface water, and drinking water supply with toxic and carcinogenic chemicals would not have occurred.

108.    As a direct and proximate result of Defendants' failure to warn against the likelihood of contamination from their AFFF, the groundwater and drinking water on and around the Bases became contaminated with PFOS and PFOA.

109.    As a direct and proximate result of Defendants' failure to warn of the environmental and health impacts caused by their AFFF, the drinking water supplies on and

around the Bases became contaminated with PFOS and PFOA and have caused personal injury to Plaintiff as described above.

110.    Defendants' failure to provide adequate warnings and instruct ions renders Defendants' AFFF unreasonably dangerous and defective products.

111.    As a result of Defendants' manufacture, sale, or distribution of a defective product, Defendants are strictly liable in damages to Plaintiff.

112.    As a direct and proximate result of Defendants' placing their defective products into the stream of commerce and failing to warn consumers and users of their products of the near certainty of environmental contamination and the increased risk of cancer and other medical conditions associated with exposure to PFOS and PFOA as described herein, Plaintiff developed multiple sclerosis and other health conditions; was injured catastrophically; was caused to suffer severe and permanent pain, disability, impairment, and loss of enjoyment of life; and suffered economic damages, including loss of income and expenses for medical care and treatment.

113.    Plaintiff will continue to suffer these damages and expenses in the future.

114.    Defendants' distribution of their defective products, despite their knowledge of the defects, including the risks of widespread contamination of the groundwater, surface water, and drinking water supplies with toxic and carcinogenic chemicals and the risks to the unsuspecting residents in surrounding area, such as Plaintiff, among other reasons, demonstrates that Defendants' conduct was willful, wanton or reckless, and undertaken with a reckless indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor for compensatory and punitive damages, together with delay damages, costs herein incurred, attorneys' fees, and all such other and further relief that this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### Defective Product - Design Defect (Consumer Expectations)

115.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

116.    At all times relevant, Defendants were in the business of, among other things, manufacturing, selling and otherwise distributing AFFF.

117.    As manufacturers, sellers or distributors, Defendants had a duty to make and/or market AFFF that was free from a defective condition unreasonably dangerous to persons that foreseeably would come into contact with it.

118.    Defendants breached that duty because the AFFF that they manufactured, sold or distributed was dangerous to an extent beyond that contemplated by an ordinary consumer when used in its intended and reasonably foreseeable manner.

119.    Defendants, as manufacturers, sellers and distributors of AFFF placed into the stream of commerce, are guarantors of their AFFF.

120.    Defendants knew or should have know that the Toxic Surfactants contained in their AFFF was toxic and carcinogenic and could lead those exposed to these toxic chemicals and/or their breakdown products to develop serious medical conditions.

121.    Defendants knew or should have know that the foreseeable storage, use and disposal of the AFFF that they manufactured, sold, and distributed had the capacity to enter the water supply, to persist there for decades, and to cause harm to human health and the environment.

122.    Defendants' AFFF was far more dangerous than an ordinary user and/or consumer would expect when used, as designed, in its intended or reasonably foreseeable manner.

16

123.    Defendants' AFFF was, therefore, unreasonably dangerous.

124.    The risks of AFFF were not obvious to users of the AFFF, nor were they obvious to residents in the vicinity of the AFFF use, including Plaintiff, who was unwittingly exposed to Defendants' toxic and carcinogenic chemicals in his drinking water.

125.    Plaintiff could not have reasonably discovered the defects and risks associated with AFFF use.

126.    Plaintiff could not have protected herself from exposure to Defendants' toxic and carcinogenic chemicals.

127.    The Defendants' AFFF was in a defective condition unreasonably dangerous because it was dangerous to an extent beyond that contemplated by an ordinary user and/or consumer when used in its intended and reasonably foreseeable manner.

128.    Defendants' AFFF was, therefore, defective.

129.    It was foreseeable that toxic chemicals from the AFFF that Defendants manufactured, sold and distributed would enter the water supply of the Plaintiff and cause harm to his person.

130.    As a result of Defendants' manufacture, sale or distribution of a defectively designed product, Plaintiff's drinking water supply became contaminated with dangerous and toxic chemicals and damaged the Plaintiff.

131.    As a result of Defendants' manufacture, sale or distribution of a defective product, Defendants are strictly liable in damages to the Plaintiff.

132.    As a direct and proximate result of Defendants' manufacture, sale or distribution of a defective product, the drinking water supplies in and around the Bases became contaminated with PFOS and PFOA and have caused personal injury to Plaintiff as described above.

133.    As a direct and proximate result of Defendants' placing their defective products into the stream of commerce and failing to warn consumers and users of their products of the near certainty of environmental contamination and the increased risk of cancer and other medical conditions associated with exposure to PFOS and PFOA as described herein, Plaintiff developed multiple sclerosis and other health conditions; was injured catastrophically; was caused to suffer severe and permanent pain, disability, impairment and loss of enjoyment of life; and suffered economic damages, including a loss of income and expenses for medical care and treatment.

134.    Plaintiff will continue to suffer these damages and expenses in the future.

135.    Defendants' distribution of their defective products, despite their knowledge of the defects, including the risks of widespread contamination of the groundwater, surface water, and drinking water supplies with toxic and carcinogenic chemicals and the risks to the unsuspecting residents in surrounding area, such as Plaintiff, among other reasons, demonstrates that Defendants' conduct was willful, wanton or reckless, and undertaken with a reckless indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor for compensatory and punitive damages, together with delay damages, costs herein incurred, attorneys' fees, and all such other and further relief that this Court deems just and proper.

### THIRD CLAIM FOR RELIEF

### Defective Product - Design Defect (Risk-Utility)

136.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

137.    At all times relevant, Defendants were in the business of, among other things, manufacturing, selling or otherwise distributing AFFF.

138.    As manufacturers, sellers, or distributors, Defendants had a duty to make and/or market AFFF that was free from defective condition unreasonably dangerous to persons that foreseeably would come into contact with it.

139.    Defendants' AFFF was defectively designed and manufactured when it left the hands of Defendants, such that the foreseeable risks associated with the use, storage, and disposal of the AFFF exceeded the alleged benefits associated with its design and formulation.

140.    At all relevant times, Defendants' AFFF created significant risks to the environment and to human health, including Plaitniff's health, which far outweighed its utility.

141.    It was foreseeable that toxic chemicals from the AFFF that Defendants manufactured, sold and distributed would enter the water supply of Plaintiff and cause harm to his person.

142.    As a result of Defendants' manufacture, sale or distribution of a defectively designed product, Plaintiff's drinking water supply became contaminated with dangerous and toxic chemicals and damaged the Plaintiff.

143.    Alternative designs of AFFF were available, technologically feasible and practical, and would have reduced or prevented the harm to Plaintiff.

144.    For example, all of the Defendants, except for 3M, developed alternative formulations of AFFF that do not contain Toxic Surfactants and that these Defendaants claim are as effective as their prior formulations, but are safer for human health and the enviroment.

145.    Upon information and belief, Defendants' current formulations were technologically feasible during the relevant period.

146.    A reasonable alternative design would, at a reasonable cost, have reduced or eliminated the foreseeable risks of harm posed by AFFF.

147.    The AFFF manufactured, sold, or distributed by the Defendants was defective in design because the foreseeable risk of harm posed by the AFFF could have been reduced or eliminated by the adoption of a reasonable alternative design.

148.    At all times relevant to this litigation, Defendants' AFFF reached its intended consumers and users without substantial change in its condition as designed, manufactured, sold, distributed, labeled and marketed by Defendants.

149.    As a direct and proximate result of Defendants' placing their defective products into the stream of commerce and failing to warn consumers and users of their products of the near certainty of environmental contamination and the increased risk of cancer and other medical conditions associated with exposure to PFOS and PFOA as described herein, Plaintiff developed multiple sclerosis and other health conditions; was injured catastrophically; was caused to suffer severe and permanent pain, disability, impairment and loss of enjoyment of life; and suffered economic damages, including a loss of income and expenses for medical care and treatment.

150.    Plaintiff will continue to suffer these damages and expenses in the future.

151.    As a result of Defendants' manufacture, sale and distribution of a defective product, Defendants are strictly liable in damages to the Plaintiff.

152.    Defendants' distribution of their defective products, despite their knowledge of the defects, including the risks of widespread contamination of the groundwater, surface water, and drinking water supplies with toxic and carcinogenic chemicals and the risks to the unsuspecting residents in surrounding area, such as Plaintiff, among other reasons, demonstrates that Defendants' conduct was willful, wanton or reckless, and undertaken with a reckless indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor

for compensatory and punitive damages, together with delay damages, costs herein incurred,

attorneys' fees, and all such other and further relief that this Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**

**Negligence**

153.    Plaintiff hereby incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint as if they were set forth at length herein.

154.    The Defendants had a duty to manufacture, market, and sell their AFF in a manner

that avoided harm to those who foreseeably would come into contact with it.

155.    Defendants knew or should have known that the manfacture of AFFF containing

Toxic Surfactants was hazardous to human health and the environment.

156.    Defendants further knew or should have known that it was unsafe and/or

unreasonably dangerous to manufacture AFFF using Toxic Surfactants because it was a near

certainty that the chemicals would migrate off of the Bases and contaminate the ground water and

drinking water supply in the surrounding areas.

157.    Defendants knew or should have know that the Toxic Surfactants used in the

manufacture of their AFFF doe not degrade, remain in the environment for decades, and

bioaccumulate, thereby creating a potential health risk that could last for many years.

158.    Plaintiff was a foreseeable victim of the harm caused by Defendants' AFFF.

159.    As a result of Defendants' breach of their legal duties, the drinking water in and

around the Bases, including Plaintiff's drinking water supply, became contaminated with unsafe

levels of PFOS and PFOA.

160.    As a result of Defendants' negligent, reckless and/or intentional acts and

omissions alleged herein, Plaintiff's drinking water supply became contaminated with PFOS and

PFOA.

161.    As a direct and proximate result of Defendants' negligence, Plaintiff developed multiple sclerosis and other health conditions; was injured catastrophically; was caused to suffer severe and permanent pain, disability, impairment and loss of enjoyment of life; and suffered economic damages, including a loss of income and expenses for medical care and treatment.

162.    Defendants' manufacture, marketing and sale of AFFF, despite their knowledge of the risks of widespread contamination of the groundwater, surface water, and drinking water supplies with toxic and carcinogenic chemicals and the risks to the unsuspecting residents in the surrounding areas, including Plaintiff, among other reasons, demonstrates that Defendant's conduct was willful, wanton or reckless, and undertaken with a reckless indifference to the rights of Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor for compensatory and punitive damages, together with delay damages, costs herein incurred, attorneys' fees, and all such other and further relief that this Court deems just and proper.

## DAMAGES

163.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if they were set forth at length herein.

164.    Plaintiff seeks monetary damages for each violation of the First through Fourth Claims for Relief.  In particular, Plaintiff seeks monetary damages:

(i)    to compensate Plaintiff for the pain and suffering caused by the personal injuries detailed above;

(ii)    to compensate Plaintiff for medical costs and expenses incurred in connection to the personal injuries as detailed above;

(iii)    for such other monetary damages as are required to fully compensate Plaintiff for

the losses she has and will continue to suffer as a result of Defendants' conduct;

and

(iv)    delay damages, including pre-judgment and post-judgment interest according to

law.

165.    Plaintiff seeks punitive damages in an amount sufficient to deter Defendants'

similar wrongful conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests the Court to enter judgment against the Defendants, as

follows:

A.    An award to Plaintiff of compensatory and punitive damages in an amount to be

proven at trial;

B.    An award of attorneys' fees and costs;

C.    Delay damages, including an award of pre-judgment and post-judgment interest,

as provided by law;

D.    An award of Punitive damages; and

E.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,

SACCHETTA & BALDINO

By:    */S/Thomas F. Sacchetta*
       THOMAS F. SACCHETTA, ESQUIRE
       Sacchetta & Baldino
       308 East Second Street
       Media, PA 19063
       (610) 891-9212
Dated: March 22, 2023    Attorney for plaintiff

23

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.


Respectfully submitted,

SACCHETTA & BALDINO


By:    */S/Thomas F. Sacchetta*
        THOMAS F. SACCHETTA, ESQUIRE
        Sacchetta & Baldino
        308 East Second Street
        Media, PA 19063
        (610) 891-9212
        Attorney for plaintiff


Dated: March 22, 2023